**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAMON SHARON RUSH,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 15-1839** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **AQUA AMERICA, INC. d/b/a** | : | |
| **AQUA PENNSYLVANIA, &** | : | |
| **AQUA PENNSYLVANIA, INC.,** | : | |
| | : | |
| **Defendants.** | : | |

**<u>MEMORANDUM</u>**

Tucker, J.                                                                                    August _7_, 2017

Presently before the Court are Plaintiff's Complaint (Doc. 1), Plaintiff's Amended

Complaint (Doc. 20), Defendant Aqua America, Inc. d/b/a Aqua Pennsylvania's and Aqua

Pennsylvania, Inc.'s Motion for Summary Judgment (Doc. 55), Plaintiff's Response to Aqua

America, Inc. d/b/a Aqua Pennsylvania's and Aqua Pennsylvania, Inc.'s Motion for Summary

Judgment (Doc. 59), Defendant Aqua America, Inc. d/b/a Aqua Pennsylvania's and Aqua

Pennsylvania, Inc.'s Reply to the Response (Doc. 63), Defendant USA's Response to Aqua

America, Inc. d/b/a Aqua Pennsylvania's and Aqua Pennsylvania, Inc.'s Motion for Summary

Judgment (Doc. 64), Defendant USA's Motion for Summary Judgment (Doc. 65), Defendant

Aqua America, Inc. d/b/a Aqua Pennsylvania's and Aqua Pennsylvania, Inc.'s  Reply to the

USA's Response and Response to the USA's Motion for Summary Judgment (Doc. 67),

Plaintiff's Response to the USA's Motion for Summary Judgment (Doc. 70), Defendant USA's

Reply to Plaintiff's Response (Doc. 72), and Plaintiff's Reply to the USA's Reply (Doc. 74).

Upon consideration of the parties' motions and for the reasons set forth below, Defendant Aqua America, Inc. d/b/a Aqua Pennsylvania's and Aqua Pennsylvania, Inc.'s Motion for Summary Judgment is GRANTED and Defendant USA's Motion for Summary Judgment is DENIED.

## I. FACTUAL BACKGROUND

Plaintiff Damon Sheron Rush ("Plaintiff"), through Robert S. Evans (Administrator of Plaintiff's Estate), brings this action against Defendant United States of America (the "USA") and Defendants Aqua America, Inc. d/b/a Aqua Pennsylvania and Aqua Pennsylvania, Inc. ("Aqua") for negligence under the Federal Tort Claims Act. 28 U.S.C. §§ 1346(b), 2671–2680 (the "FTCA"). Plaintiff alleges that Defendants' negligence, carelessness, and/or recklessness was the sole or substantial contributing cause of the accident and injuries that he suffered as a result of falling through a steel manhole/sewer/mechanical access cover (the "Cover"). Compl., Doc. 1, ¶¶ 2, 17, 22. Plaintiff also brings a survival action under the Pennsylvania Survival Act, 42 Pa. C.S.A. § 302 *et seq.* and a wrongful death action under the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. § 8301 *et seq.* Am. Compl., Doc. 20, ¶¶ 33, 37.

In 2013, Plaintiff was working for Watts Industries, Inc. Compl. ¶ 15. On April 17, 2013, Plaintiff was working as a landscaper on the United States Marine Corps Training Center located at 601 Kedron Avenue, Folsom, PA 19033 (the "Property"). *Id.* ¶ 16. In this capacity, Plaintiff fell through the Cover located on the Property, causing him to suffer physical injuries "including but not limited to" his neck, back, left leg, left knee, left foot, left side, a fracture of his left foot/big toe, a sprain and strain of the cervical spine, a sprain and strain of the lumbar spine, and a medial meniscus tear of the left knee. *Id.* ¶ 17–18. Plaintiff had to undergo at least one surgery and "other extensive treatment" as a result. *Id.* ¶ 18.

Plaintiff alleges that he had to undergo a cervical spine surgery in June 2015 "[a]s a result

of the accident." Am. Compl., ¶ 20. Plaintiff asserts that he acquired an infection as a result of

the surgery and "was prescribed numerous pain medications, all of which caused his death,"

concluding that the accident on the USA's Property was the proximate and legal cause of his

death. *Id.* ¶ 20. Plaintiff died on July 7, 2015. *Id.* ¶ 21.

Plaintiff alleges that the "sole or substantial contributing cause" of his fall, his injuries,

and his death was the "negligence, carelessness and/or recklessness of all Defendants." *Id.* ¶ 25.

Plaintiff asserts that this negligence consisted of, among other things, Defendants': (a) failure to

inspect the Property which resulted in the continued existence of a dangerous condition on their

Property that posed a danger to all individuals on the Property; (b) failure to warn Plaintiff and

others similarly situated of the dangerous condition which Defendants knew or should have

known would not be noticed by individuals such as Plaintiff lawfully using or working on the

Property; (c) allowing the Property or Cover to remain in a dangerous condition; and (d) being

otherwise negligent and careless under the circumstances. *Id.* ¶¶ 25(a)–(m). Plaintiff alleges that

as a result of this negligence, Plaintiff suffered, among other things, permanent and severe

injuries including those listed above, inability to attend to usual activities and loss of earnings

and earnings capacity, mental anguish and humiliation, deprivation of enjoyment of life, and pain

and suffering. *Id.* ¶¶ 26–31.

## II.     PROCEDURAL HISTORY

Plaintiff complied with the pre-suit requirements of the FTCA by presenting an

administrative claim in a timely and appropriate fashion. Compl., Doc. 1, ¶ 14. However,

Plaintiff's claim was "not acted upon" within the time period designated for administrative

disposition of claims of this nature under the FTCA. *Id.* Plaintiff asserts that his claim is

therefore deemed to have been denied. *Id.* Plaintiff then filed his Complaint in this Court on

April 9, 2015, and subsequently filed his Amended Complaint on November 24, 2015.

## III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotations omitted)). A "material fact" is one that "might affect the outcome of the suit under the governing law." *Liberty Lobby, Inc.*, 477 U.S. at 248.

The party seeking summary judgment "has the initial burden of showing the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden does not require the moving party to "produce evidence showing the absence of a genuine issue of material fact," but rather, the movant "may be discharged by 'showing'—that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party satisfies this burden, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided . . . , must set forth specific facts showing that there is a genuine issue for trial." *Holt Cargo Systems, Inc. v. Delaware River Port Authority*, 20 F. Supp. 2d 803, 817 (E.D. Pa. 1998), aff'd, 165 F.3d 242 (3d Cir. 1999).

In reviewing a motion for summary judgment, the court must "draw all reasonable inferences in the light most favorable" to the nonmoving party. *Big Apple BMW, Inc. v. BMW of*

*N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Thus, where "the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Id.* Further, if the non-moving party has "exceeded the 'mere scintilla' threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent." *Id.* The nonmoving party, however, must "do more than rest upon mere allegations, general denials, or vague statements." *Trap Rock Indus., Inc. v. Local 825*, 982 F.2d 884, 890 (3d Cir. 1992).

The inquiry performed by the court at this stage is "the threshold inquiry of determining whether . . . there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby, Inc.*, 477 U.S. at 250. If the court finds that there "is sufficient evidence to reasonably expect that a jury could return a verdict in favor" of the moving party, that is "enough to thwart imposition of summary judgment." *See id.* at 248–51.

## IV.    DISCUSSION

This analysis will begin by discussing Aqua's Motion for Summary Judgment. Neither the USA nor Plaintiff presented evidence sufficient to establish a genuine issue of material fact as to any of the claims against Aqua; therefore, this Court will grant Aqua's Motion. This analysis will then proceed to a discussion of the USA's Motion for Summary Judgment. The evidence in Plaintiff's responses to the USA's Motion are sufficient to create genuine issues of material fact; therefore, this Court will deny the USA's Motion.

### a.    AQUA'S MOTION FOR SUMMARY JUDGMENT

Aqua advances four grounds for summary judgment: (1) the USA admitted that it owned and still owns the property on which Plaintiff was injured; (2) the applicable tariff for providing

water service identifies the USA as the owner and responsible party for maintenance of the meter vault Plaintiff fell into; (3) the USA repaired the meter vault and never requested reimbursement from Aqua following Plaintiff's accident; and (4) if the Court dismisses Plaintiff's claims against Aqua then it must similarly dismiss all crossclaims against Aqua by the USA because the USA has not alleged any independent basis for these crossclaims. Aqua's Mot. Summ. J., Doc. 55, 2–3. This analysis will consider these arguments in turn.

### 1. Aqua is Not the Owner or Possessor of the Property Where Plaintiff's Fall Occurred

Aqua correctly asserts in its Motion that the USA owned the Property where Plaintiff's fall occurred and still owns that Property today. Aqua's Mot. Summ. J., 2. In fact, the USA admits that it owns and operates the Property where Plaintiff's accident occurred. *Id.* at 3.

Because neither Plaintiff nor the USA disputes this claim, there is no genuine issue of material fact on the issue of whether the USA owns the Property where Plaintiff's fall occurred.

### 2. The PUC Tariff Correctly Identifies the USA as the Responsible Party for Maintenance of the Meter Vault at Issue

Aqua, quoting in relevant part from the Pennsylvania Public Utility Commission ("PUC") tariffs and supplements, asserts correctly that it is the "responsibility of the Customer," in this case the USA, "as the owner of the Meter Box/Vault to maintain the Meter Box/Vault and lid in a safe condition." Aqua's Mot. Summ. J., 4. Moreover, Aqua correctly states that the PUC tariffs and supplements have the force of law and that they are binding on the customer and the utility. *Id.* at 9 (citing *Stiteler v. Bell Tel. Co.*, 379 A.2d 339, 341 (Pa. Cmwlth 1977) (*See also Behrend v. Bell Tel. Co.*, 242 Pa. Superior Ct. 47, 75, 636 A.2d 1152, 1165 (1976) (vacated and remanded on other grounds))).

Neither Plaintiff nor the USA challenges the assertion that the tariff has the force of law.

Both parties, however, raise challenges suggesting that there is a genuine issue of material fact as to whether Aqua shared any responsibility for the maintenance of the vault at issue. Both Plaintiff and the USA quote *Behrend*'s language stating that "[t]he courts retain jurisdiction of a suit for damages based on negligence . . . wherein a utility's performance of its legally imposed and contractually adopted obligations are examined and applied to a given set of facts." 242 Pa. Superior Ct. 47, 59, 363 A.2d 1152, 1158 (1976). Pl.'s Resp. to Aqua's Mot. Summ. J., Doc. 59, 5; USA's Resp. to Aqua's Mot. Summ. J., Doc. 64, 4.

Further, Plaintiff argues that the applicable tariff in no way suggests that the "meter vault was ***solely*** owned or maintained" by the USA, and that the tariff "implicitly suggests" that Aqua retained "ultimate control over the meter vault" as Aqua could "terminate service with the USA" for, e.g., "refusal of reasonable access . . . for reading, caring for, removing, or installing Meters." Pl.'s Resp., 5 (emphasis in original). The USA raises a functionally equivalent argument. USA's Resp., 4. Both the USA and Plaintiff also argue that Aqua had "unfettered access" to the meter vault in support of the proposition that Aqua shared responsibility for maintaining the meter vault. Pl.'s Resp., 6; USA's Resp. J., 6. Moreover, the USA and Plaintiff both argue that changes to the tariff language in 2015 indicate that the tariff language in effect at the time of Plaintiff's fall did not clearly indicate who was responsible for the meter vault. Pl.'s Resp., 6; USA's Resp, 4. Finally, both the USA and Plaintiff argue that Aqua's "protocol" of reporting defects in meter vaults and meter vault covers gives rise to a duty of care to maintain the meter vault in a safe condition. Pl.'s Resp., 7; USA's Resp., 6.

There are several problems with these arguments. First, neither the USA nor Plaintiff argues that Aqua has a "legally imposed" or "contractually adopted obligation" to maintain the meter box or vault, so both parties' citations of *Behrend* are puzzling. Specifically, the USA

argues that the case law does not "support Aqua's effort to take this case out of the Court's jurisdiction." USA's Resp., 6. However, as this Court can best discern, Aqua is not trying to remove the case to the jurisdiction of the PUC; Aqua is arguing that it is entitled to judgment as a matter of law. Furthermore, a plain reading of the PUC tariff clearly indicates that the responsibility for both the meter box and vault rested with the USA. Although both Plaintiff and the USA assign great weight to the fact that Aqua amended the tariff after the beginning of the instant action "to make clear" that it was the customer's responsibility to maintain the meter vault, neither party includes the previous tariff language that they suggest is ambiguous enough to create a genuine issue of fact as to whether Aqua and the USA shared control of the vault. Pointing out that the language was changed after the start of the instant action with no other support seems to be just the sort of "mere allegations, general denials, or vague statements" insufficient to create a genuine issue of material fact. *Trap Rock Indus., Inc. v. Local 825*, 982 F.2d 884, 890 (3d Cir. 1992).

Second, while the USA and Plaintiff devote significant time to attempting to establish Aqua's "control" over the meter box and "unfettered access" to the meter vault, ultimately these arguments conflate these two, distinct objects. Even assuming that Aqua did have "ultimate control" over the meter box itself, neither the USA nor Plaintiff establishes how this would give rise to a "legally imposed" or "contractually adopted obligation" to maintain the door to the vault containing that meter. The same can be said for Aqua's supposed "unfettered access" to the vault. It is not clear how "unfettered access," either in and of itself or in addition to Aqua's supposed "ultimate control" of the meter box, would give rise to a legal duty obligating Aqua to maintain the meter vault in a safe condition. The PUC tariff clearly identifies the USA as the owner responsible for maintaining the box and vault *and* the USA admits to owning the Property

where the vault is located. Furthermore, it was Aqua's practice to read the meter on the USA's Property remotely, and as a result no agent of Aqua had been in the meter vault to which they enjoyed "unfettered access" for four years prior to Plaintiff's accident. Aqua's Reply to Pl.'s Response, Doc. 63, 6.

Third, although both the USA and Plaintiff place great significance on the fact that it was Aqua's practice to "report up" defects in the meter box and vault for repairs, this argument seems to cut in favor of Aqua's contention that it does not control either the meter box or vault and that it is the USA's responsibility to maintain both the meter box and the vault. If Aqua maintained "ultimate control" over the meter box and "unfettered access to" the vault, and if it was Aqua's responsibility to maintain both the meter box and vault (in direct contradiction of the PUC tariff), it would bolster the USA's and Plaintiff's case if Aqua did in fact take responsibility for that maintenance and subsequently repaired any defects after Plaintiff's fall. This was not the case. Further, as Aqua asserts in its Reply supporting its Motion, this argument by the USA would produce an absurd outcome requiring bystanders not to alert others to dangerous conditions lest they assume a duty to other parties in doing so. Aqua's Reply to USA's Resp., Doc. 67, 2.

For these reasons, there is no genuine issue of material fact regarding the USA's responsibility for the meter box and vault.

### 3. The USA Maintained the Meter Vault

Aqua correctly asserts that the USA maintained the meter vault where Plaintiff's fall occurred. Specifically, Aqua indicates that the USA replaced the lid to the vault that Plaintiff fell into after the accident, performed repairs to the vault itself after Plaintiff's fall, and never asked Aqua to compensate it in whole or in part for the costs of these repairs. Aqua's Mot. Summ. J., 4–5.

Neither Plaintiff nor the USA disputes this claim. It is worth noting that these actions by the USA also cut in favor of Aqua's argument that the USA owned, controlled, and was responsible for maintaining the meter vault.

Therefore, there is no genuine issue of material fact regarding whether the USA maintained the meter vault.

### 4. The USA's Crossclaims Against Aqua Must Be Dismissed

Aqua correctly asserts that, if this Court grants Aqua's motion, the USA's crossclaims "must be dismissed for failure to state a claim." Aqua's Mot. Summ. J., 14. This is true because the USA "has not alleged an independent basis for its crossclaim . . . nor has it offered any evidence in support thereof." Aqua's Mot. Summ. J., 14.

Neither Plaintiff nor the USA disputes this claim. Therefore, there is no genuine issue as to any material fact regarding whether the USA's crossclaims must be dismissed.

### b. THE USA'S MOTION FOR SUMMARY JUDGMENT

The USA advanced two grounds for summary judgment: (1) Plaintiff has no admissible record evidence of either the circumstances of his fall or the existence of an unreasonably dangerous condition causing Plaintiff to fall, and (2) there is no evidence that the USA had any notice of an unreasonably dangerous condition. USA's Mot. Summ. J., Doc. 65, 1. These arguments will be considered in turn.

### 1. Plaintiff's Record Evidence is Admissible and Allows Reasonable Inferences of an Unreasonably Dangerous Condition on the USA's Property Causing Plaintiff to Fall

In support of its first argument, the USA asserts that the only record evidence of the circumstances of Plaintiff's fall is his testimony from his worker's compensation proceeding, and that this testimony is inadmissible under Federal Rule of Evidence 804(b) because neither the

USA nor any "predecessor in interest" with a "similar motive" was present at the proceeding to cross-examine Plaintiff. USA's Mot. Summ. J., Attachment 2, 1. The USA then argues that because this testimony is inadmissible, Plaintiff cannot show that his injuries were caused by the existence of an "unreasonably dangerous condition" on the USA's property. *Id.* at 1.

Plaintiff advances two arguments in response to the USA's first grounds for summary judgment: (1) Plaintiff's workers' compensation deposition and testimony "qualify as the prior testimony hearsay exception," and (2) even absent this evidence, there is still "substantial evidence" creating a "material question of fact" regarding an "unreasonably dangerous condition causing" Plaintiff's fall. Pl.'s Resp., Doc. 70, 12, 15. In support of his first argument, Plaintiff cites Pennsylvania Workers' Compensation laws and relevant case law. Pl.'s Resp., 14. In support of his second argument, Plaintiff refers to several exhibits attached to his memorandum that will be enumerated in greater detail below.

The USA then filed a Reply in support of its Motion for Summary Judgment arguing that Plaintiff's evidence was insufficient to create an issue of fact and that Plaintiff had "failed to meet his burden on summary judgment." USA's Reply, Doc. 72, 2, 8.

This analysis will separate the USA's first grounds for summary judgment into two parts and address them in turn. First, the USA incorrectly concludes that Watts Industries, Inc. was not its "predecessor in interest" and that it did not share a "similar motive" under Rule 804(b)(1) and Third Circuit precedent. Second, the USA incorrectly concludes that the other record evidence submitted by Plaintiff is inadmissible.

### i. *Watts Industries, Inc. was the USA's "Predecessor in Interest" and Shared a "Similar Motive with the USA Under Federal Rule of Evidence 804 and Third Circuit Precedent*

In support of its argument that Watts Industries, Inc. was not its "predecessor in interest"

under Federal Rule of Evidence 804(b)(1), the USA argues that Watts Industries fails the "similarity of motive" requirement. USA's Reply, Doc. 72, 3. The USA, citing *Kirk v. Raymond Indus., Inc.*, 61 F.3d 147, 166 (2d Cir. 1995), asserts that the "similarity of motive" requirement exists to ensure that "the earlier treatment of the witness is the rough equivalent of what the party against whom the statement is offered would do at trial if the witness were available to be examined by that party." USA's Mot. Summ. J., Doc. 65, 6. The USA further argues that Watts Industries, Plaintiff's employer at the time of his fall, did not have a "similar motive" to develop Plaintiff's testimony regarding the cause of his fall because, under the Pennsylvania Workers' Compensation Act ("PWCA"), the employer pays compensation anytime an employee is injured in the course of employment whether the employer, employee, or a third party "was causally negligent." USA's Reply, Doc. 72, 6–7 (citing *Heckendorn v. Consol. Rail Corp.*, 465 A.2d 609, 613 (Pa. 1983)). The USA then concludes that because neither the USA nor Aqua were "parties to or participated in Plaintiff's workers' compensation proceedings," they were "deprived of any opportunity" to cross-examine Plaintiff. USA's Mot. Summ. J., 6.

In response to this assertion, Plaintiff argues that the workers' compensation testimony is admissible because the word "similar" does not mean "identical." Pl.'s Resp., Doc. 70, 12 (citing *Murray v. Toyota Distrib. Inc.*, 664 F.2d 1377 (9th Cir. 1982)). Plaintiff also rejects the USA's argument that Watts Industries "did not have a motive to develop" Plaintiff's testimony regarding the fall, arguing that Watts Industries could avoid liability under the PWCA if they could prove Plaintiff was reckless in connection with the accident or his injury was caused by his violating the law, e.g., as the result of illegal drug use. Pl.'s Resp., 13 (citing the PWCA, Article II, § 201(c) and Article III, § 301(a)). From this, Plaintiff concludes that his workers' compensation testimony is admissible in the instant case. Pl.'s Resp., 14. Plaintiff's argument is

persuasive.

Under Federal Rule of Evidence 804(a)(4), a declarant is "considered to be unavailable as a witness if the declarant . . . cannot be present or testify at the trial or hearing because of death," as is true in the instant case. Fed. R. Evid. 804(a)(4). However, Rule 804(b)(1) creates an exception to this rule for testimony "given as a witness at a trial, hearing, or lawful deposition" that is "now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1). The USA does not dispute that Watts Industries had the "opportunity" to cross-examine Plaintiff, but does dispute the assertion that Watts Industries shared a "similar motive" with the USA.

The USA appears to argue that the "predecessor in interest" requirement rises to the level of what is essentially privity. That is, because neither the USA nor Aqua nor any entity directly related to either the USA or Aqua was present at the workers' compensation hearing, Plaintiff's testimony at this hearing should be inadmissible. This position contradicts Third Circuit precedent. The Third Circuit, while not endorsing "an extravagant interpretation of who or what constitutes a predecessor in interest," prefers "one that is realistically generous over one that is formalistically grudging." *Lloyd v. American Export Lines, Inc.*, 580 F.2d 1179, 1187 (3d Cir. 1978) (quotations omitted). This means if a party in a former suit has "a like motive to cross-examine" the witness "about the same matters as the present party would have," and "was accorded an adequate opportunity for such an examination, the testimony may be received against the present party." *Id.* In fact, the Third Circuit expressly rejected the standard suggested by the USA, asserting that "[p]rivity or a common property interest is not required to establish a predecessor in interest relationship, rather, a shared interest in the material facts and outcome of

the case will create such an interest." *New Jersey Turnpike Authority v. PPG Industries, Inc.*, 197 F.3d 96, 110 n.21 (3d Cir. 1999).

In order to be considered a "predecessor in interest," Rule 804(b)(1) "does not require that a party had an *identical* motive to develop the testimony, only that the party had a 'similar' motive," which is "essentially a factual question." *United States v. Paling*, 580 Fed. Appx. 144, 148 (3d Cir. 2014) (citing *United States v. Salerno*, 505 U.S. 317, 326 (1992) (Blackmun, J. concurring)). Under the PWCA, it "shall not be a defense" for an employer "in any action brought to recover damages for personal injury to an employe [sic][1] in the course of his employment . . . [t]hat the injury was caused in any degree by negligence" unless the employer can establish that "the injury was caused by such employee's intoxication or by his reckless indifference to danger." Pl.'s Resp., Exhibit N, 2 (citing PWCA Article II, § 201(c)). Moreover, "every employer shall be liable for compensation for personal injury" to an employee for such an injury, except that "no compensation shall be paid when the injury . . . is intentionally self inflicted [sic], or is caused by the employee's violation of law, including, but not limited to, the illegal use of drugs." Pl.'s Resp., Exhibit O, 2 (citing PWCA Article III, § 301(a)).

Plaintiff's argument that Watts Industries' motive was sufficiently similar to the USA's is persuasive in light of this authority. As Plaintiff notes in his brief, Watts Industries "had a similar motive to the instant defendants—i.e., ascertain how the accident happened, what was taking place at the time, and who was responsible, if anyone," and whether Watts Industries availed "itself of all avenues of cross examination [sic] is of no moment under the law." Pl.'s Resp., 14. Plaintiff further notes that the PWCA gives rise to a clear motive for "inquiring into the circumstances regarding the fall, centrally focusing on the issue of recklessness, the direct

---

[1] This misspelling of "employee" persists throughout the document and is corrected hereafter for clarity's sake.

neighbor of the issue of negligence." Pl.'s Resp., 14. Therefore, while Watts Industries' motive is not *identical* to the USA's, it is sufficiently *similar* for the testimony to be admissible.

Moreover, the USA's citations in support of its argument are unpersuasive. For example, the USA cites a First Circuit case in support of the proposition that workers' compensation testimony should be inadmissible in the instant case. USA's Mot. Summ. J., 7 (citing *Holmquist v. Farm Family Casualty Ins. Co.*, 800 F. Supp. 2d 305, 310–11 (D. Me. 2011)). As Plaintiff correctly notes, however, *Holmquist* is "markedly distinguishable" from the instant case. Pl.'s Resp., 14. That is, in *Holmquist*, the party advanced as a "predecessor in interest" had "conceivably the opposite" motive of the later party. Pl.'s Resp., 14 (citing 800 F. Supp. 2d at 310). Plaintiff also undermines the USA's citation to *Biggers v. Southern Railway Co*., a case in which the issue was that the declarant had not been proven to be unavailable. Pl.'s Resp., 14 (citing *Holmquist*, 800 F. Supp. 2d at 310). In the instant case, there is no such issue.

Under the broad standard set out by the Supreme Court and the Third Circuit on this issue, and drawing all inferences in the light most favorable to the non-movant, this Court finds that there is a genuine issue of material fact on the question of whether Plaintiff's workers' compensation testimony is admissible.

### ii. *The Evidence Submitted by Plaintiff Is Sufficient to Create Genuine Issues as to Whether an Unreasonably Dangerous Condition Caused Plaintiff's Fall*

The USA's first argument in support of its proposition that there is no genuine issue of material fact supporting an inference that an unreasonably dangerous condition caused Plaintiff's fall flows directly from its argument that Plaintiff's workers' compensation testimony is inadmissible. USA's Mot. Summ. J., Doc. 65, 2, 3. Thus, because this Court finds that Plaintiff's workers' compensation testimony is admissible, this should arguably be sufficient to determine that there is a genuine issue of material fact supporting such an inference.

However, in its Reply in support of its Motion for summary judgment, the USA further argues that the evidence proffered by Plaintiff in opposition to the USA's Motion for summary judgment "does not create an issue of fact." USA's Reply, Doc. 70, 2. Specifically, the USA challenges four pieces of evidence proffered by Plaintiff: (1) the Aiello-Hess Email sent by the Commanding officer of the Marine Corps Property where Plaintiff's accident took place; (2) Plaintiff's statement "found in a police report"; (3) Plaintiff's "statements to medical providers"; and (4) the written affidavit and letter from Plaintiff's "hired private investigator." USA's Reply, 4–5, 6, 7.

In his Reply in support of his Memorandum opposing the USA's Motion for summary judgment, Plaintiff disputes the USA's objections to each piece of proffered evidence except the affidavit and letter from Plaintiff's private investigator. Therefore, this analysis will proceed in turn through the first three pieces of proffered evidence, but it will not reach the fourth.

First, the USA argues that the Aiello-Hess Email proffered by Plaintiff "does not support an inference of negligence" because it was written after Plaintiff's fall and therefore does not "provide any information regarding what caused Plaintiff to fall" and lacks evidence that the officer was "present or witnessed the fall." USA's Reply, 4–5. The USA cites no case law in support of this proposition, but references Federal Rule of Evidence 407. USA's Reply, 5. This rule precludes the use of evidence of measures taken subsequent to an injury that would have made the injury less likely in order to prove, among other things, "negligence; culpable conduct; . . . or a need for a warning or instruction." Fed. R. Evid. 407. The USA argues that because the Aiello-Hess Email was written after the fall and "requested the addition of locks and hinges to three other covers on the property," that it is inadmissible under Rule 407. USA's Reply, 5. Plaintiff responds that the language of the Email and the "totality of the evidence proving the

existence of a defect . . . is overwhelming." Pl.'s Reply, 4. Plaintiff also does not cite any case law in support of his proposition. Setting aside the language regarding subsequent remedial measures taken pursuant to Plaintiff's fall, the Aiello-Hess Email plainly states, as both Plaintiff and the USA acknowledge, that "one of our grounds maintenance contractors got injured on our property. He fell partway into our water main and meter access area" and later, "[t]he cover [to the vault] doesn't fit properly or secure. There are also three other covers that are unhinged and don't lock." Pl.'s Reply, Exhibit C, 90. These are not statements regarding subsequent remedial measures. Considered in the light most favorable to the non-movant, a reasonable factfinder could conclude that the Aiello-Hess Email supports an inference of negligence. Therefore, this Court finds that the email creates a genuine issue of material fact.

Second, the USA argues that Plaintiff's statement "found in a police report" is inadmissible hearsay. USA's Reply, 5. The USA, citing *Graham v. Jersey City Police Dept.*, No. 11-7326, 2014 WL 7177362, at *3 (D.N.J. 2014) (citing *United States v. Sallins*, 993 F.2d 344 (3d Cir. 1993)), asserts that "statements made to police from a witness, are inadmissible hearsay where . . . [offered] to establish the truth of the matters set forth in the report." USA's Reply, 5. The USA then suggests that Plaintiff "unabashedly seeks to admit [his] embedded hearsay statement regarding the circumstances of his fall for the truth." USA's Reply, 6. Plaintiff responds that the report is admissible because it constitutes firsthand knowledge and impressions gleaned by the officer. Pl.'s Reply, 4. Plaintiff further argues that the USA "seemingly wants to exclude the statement" Plaintiff made to Sgt. David A. McGrath. Pl.'s Reply, 4. Plaintiff acknowledges that even if this Court "deems [Plaintiff]'s statements" inadmissible, the rest of the report nonetheless includes information about Plaintiff's fall based on the officer's investigation. Pl.'s Reply, 5. Plaintiff cites no case law in support of his proposition. Neither Plaintiff nor the

USA identifies a specific statement made by Plaintiff and included in the officer's report that the USA seeks to exclude. Plaintiff references one statement by the officer that the vault cover "dislodged knocking [Plaintiff] into the hole where he injured his left leg," but it is unclear whether this observation was based on information from Plaintiff. Pl.'s Reply, 5. Plaintiff cites another observation from the officer's report that there was a "problem" with the vault cover, but it is also unclear whether this includes statements by Plaintiff. Pl.'s Reply, 5. The case law favors the USA's assertion that Plaintiff's statements in the report are inadmissible hearsay. USA's Reply, 6. Moreover, Plaintiff has not done "more than rest upon mere allegations, general denials, or vague statements" in establishing that the officer's observations were not gleaned from Plaintiff's own statements. *Trap Rock Indus., Inc. v. Local 825*, 982 F.2d 884, 890 (3d Cir. 1992). This Court finds Plaintiff's statements in the police report are not admissible and, therefore, that no genuine issue of material fact exists.

Third, the USA argues that Plaintiff's "statements to medical providers do not support an inference of negligence." USA's Reply, 6. The USA specifically objects to statements by a Dr. Freese that Plaintiff "fell through a man hole," that he "partially fell into a 12-foot hole, protecting himself by outstretching his arms," and that Plaintiff "stepped on a plate. And this was not solidly in place; and as a result he fell into what he told me was a 12-foot hole." USA's Reply, 6–7. The USA concludes that these statements "provide little more than confirmation that [Plaintiff] fell into the water vault." USA's Reply, 7. The USA does not cite any authority in support of its proposition that this testimony should be inadmissible hearsay. Plaintiff responds to this argument that his statements to medical providers "do support an inference of negligence." Pl.'s Reply, 5. Plaintiff, too, points to statements made to medical providers that he stepped on "a metal plate which tipped, and he fell into the hole that was covering the plate

[sic]," which could create an inference of negligence or "[a]t the very least . . . creates a genuine issue of material fact regarding the defective status of the door," particularly in tandem with other evidence about the door lacking locks or hinges. Pl.'s Reply, 5–6. Contrary to the USA's assertion, and considered in the light most favorable to Plaintiff, a reasonable factfinder could conclude that these statements allow an inference of negligence. Therefore, this Court finds that a genuine issue of material fact exists as to whether Plaintiff's statements to medical providers allow a reasonable inference of negligence and are admissible in the instant case.

For these reasons, this Court finds as follows: (1) that Watts Industries was the USA's "predecessor in interest" to the instant case; (2) that, pursuant to the first finding, Plaintiff's deposition and testimony from his workers' compensation testimony are admissible; (3) that the Aiello-Hess Email and Plaintiff's statements to medical professionals are admissible; (4) that the police report containing Plaintiff's statements is inadmissible; and (5) that, pursuant to these findings, the record evidence creates genuine issues of material fact as to the existence of an unreasonably dangerous condition on the property owned by the USA and the role this unreasonably dangerous condition played in Plaintiff's fall.

### 2. Plaintiff's Record Evidence is Admissible and Allows the Reasonable Inference that the USA had Notice of an Unreasonably Dangerous Condition on Its Property

The USA's first argument in support of its proposition that there is no evidence that it had any notice of an unreasonably dangerous condition flows directly from its argument that Plaintiff's workers' compensation deposition and testimony are inadmissible hearsay. USA's Mot. Summ. J., 5, 6. However, because this Court finds that Plaintiff's deposition and testimony are admissible, this argument fails.

The USA's second argument in support of its proposition that there is no evidence that it

had any notice of an unreasonably dangerous condition flows from its argument that Plaintiff has no admissible record evidence that his injuries were caused by a dangerous condition on the USA's Property. USA's Mot. Summ. J., 8. The USA argues that "negligence of a premises owner cannot be inferred merely because an invitee has had an accident" under Pennsylvania law.[2] USA's Mot. Summ. J., 8 (quoting *Myers v. The Penn Traffic Co.*, 606 A.2d 926, 932 (Pa. Super. Ct. 1992) (internal formatting omitted)). The USA concludes that, because Plaintiff's evidence of the circumstances causing his fall is inadmissible, Pennsylvania law prohibits the inference that he suffered his fall due to an unreasonably dangerous condition on the USA's Property based on such evidence. However, because this Court finds that Plaintiff's record evidence, including the Aiello-Hess Email and Plaintiff's statements to medical providers about the circumstances of his fall, are admissible, the Court also finds that Plaintiff has successfully demonstrated that there are genuine issues of the following material facts: (1) whether this evidence permits inferences that Plaintiff suffered his fall due to an unreasonably dangerous condition on the USA's property; (2) whether the USA had notice of the unreasonably dangerous condition; (3) whether the USA did not notify Plaintiff of this unreasonably dangerous condition even though it expected that Plaintiff would not discover or protect himself from it; and (4) whether the USA was negligent as a result.

## V. CONCLUSION

For the reasons set forth herein, Aqua's Motion for Summary Judgment is GRANTED,

---

[2] The USA asserts that Pennsylvania negligence law applies in the instant case under The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 (the "FTCA"). The FTCA is the "exclusive cause of action available to plaintiffs who seek tort damages from the United States and its agencies." USA's Mot. Summ. J., Doc. 65, 4 (citing 28 U.S.C. §§ 1346(b)(1), 2679(a)). Under the FTCA, the United States is liable in tort "in the same manner and to the same extent as a private individual under like circumstances," and is the "only permissible defendant under the FTCA." 28 U.S.C. §§ 2674, 2679(a).

and the USA's Motion for Summary Judgment is DENIED. An appropriate Order follows.